IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER NOVUS DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:13-CV-1260-SMY-RJD |
| | ) |
| LUCAS NANNY, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion *in Limine* 5, which the Court took under advisement. Upon further consideration, Defendants' Motion *in Limine* 5 is **GRANTED**.

According to his Amended Complaint, Plaintiff brings his action under 42 U.S.C. § 1983, alleging that Defendants "intentionally deprived him of his Constitutional rights during his stay at Chester Mental Health Center on December 26, 2011." (Doc. 12 at ¶1). Specifically, Plaintiff alleges that Defendants, who worked as Security Therapy Aides at the Chester Mental Health Center, beat him in an unmonitored area of the facility while escorting him back to his room in full restraints. (Id. at ¶¶ 7, 16-20). After the Amended Complaint was screened pursuant to 28 U.S.C. §1915A, the remaining Count alleges that Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments. (Id. at ¶¶ 27, 29, Doc. 13 at 5).

Defendant's MIL 5 seeks to bar Plaintiff or his witnesses "from offering evidence or eliciting any testimony relating to the Illinois Administrative Code, including but not

limited to the use of force." (Doc. 104 at 5). Defendants argue that the Administrative Code is irrelevant to the question of whether Plaintiff's constitutional rights were violated by their alleged conduct. (Id. at 4-5). They rely primarily on the Seventh Circuit's decision in *Thompson v. City of Chicago*, 472 F.3d 444, 446 (7th Cir. 2006), a case asserting a violation of the Fourth Amendment.

Plaintiff argues that the Illinois Administrative Code is relevant and therefore admissible in cases alleging excessive force. He refers to the Screening Order applicable to the original Complaint, which determined that Plaintiff's *pro se* filing asserted an Eighth Amendment claim for excessive use of force (Doc. 141 at 3, referencing Doc. 6) and asserts that courts allow evidence of the violation of administrative policies in Eighth Amendment excessive force cases, and that such cases are specifically distinguished from Fourth Amendment cases like *Thompson*. (Doc. 141 at 3-4).

During the Final Pretrial Conference, Plaintiff's counsel informed the Court that, contrary to their briefing, Plaintiff's case should be analyzed under the Fourteenth Amendment, as he was a "detainee," and not a convicted felon under than the Eighth Amendment. (Doc. 162 at page 13, lines 12-17). Counsel argued that despite the change, the Court should reach the same conclusion. (Id. at page 13 line 18 through page 14 line 13).

In the Screening Order regarding the Amended Complaint, District Judge Phil Gilbert noted that at that time, Plaintiff's status when he was housed at Chester Mental Health Center was unclear. (Doc. 13 at 3). However, Plaintiff's Amended Complaint refers to him as a "detainee" or "patient" (Doc. 12). The publicly-available records from the Lake County Circuit Clerk suggest he was in custody at the time he arrived at Chester Mental

Health Center, but was not sentenced until after the events at issue in this case.

Plaintiff's status at the time of the offense is material; the source of an individual's rights (and the elements of a claim) in use-of-force cases varies depending on their status. See *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009) ("The scope of an individual's right to be free from punishment- and, derivatively, the basis for an excessive force action brought under § 1983- hinges on his status within the criminal justice system.") Convicted prisoners must bring excessive force claims under the Eighth Amendment's cruel and unusual punishment clause, while pretrial detainees' rights spring from the Fourteenth Amendment's due process clause. The reason for the distinction is that "[p]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015) (quotation omitted).

For an Eighth Amendment excessive force claim, the "core inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). There is a subjective element which requires a finder of fact to "inquire into [the] prison official's state of mind" to determine whether a constitutional violation has occurred, because "[i]f the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quotation omitted). By contrast, to prevail on an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473.

Section 1983 protects plaintiffs from constitutional violations, not violations of state laws, regulations or policies. See *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). The Seventh Circuit has found in the context of Fourth Amendment excessive force claims, which, like Fourteenth Amendment claims by pretrial detainees involve those who have not been adjudged guilty and sentenced to punishment and utilizes an objectively-reasonable test, evidence of such laws or policies "is completely immaterial as to the question of whether a violation of the federal constitution has been established" and therefore subject to exclusion. *Thompson*, 72 F.3d at 454 (citing *Scott*). Plaintiff points to *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009), in which the Seventh Circuit found with respect to Eighth Amendment claims, "although violation of the prison's rule against public searches was not, by itself, a violation of the [C]onstitution…it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass." That is, the existence of a policy that may have been violated was relevant to show the required state of mind—the subjective element of that claim.

In reconciling *Thompson* and *Mays*, this Court agrees with the reasoning in *Estate of Carlock v. Williamson*, No. 08-3075, 2013 WL 12244415 (C.D. Ill. June 21, 2013). There, District Judge Sue E. Myerscough pointed out that the subjective element of an Eighth Amendment claim – which may be shown by the knowing violation of a prison policy – is what renders evidence of a policy or procedure relevant and admissible. *Id.* at *7. She then concluded that if a Fourteenth Amendment excessive force case includes a subjective element (an unsettled question at that time), "then a knowing violation of a department policy may be relevant." *Id.* The Supreme Court subsequently held in *Kingsley* that there is no subjective element to a pretrial detainee's Fourteenth Amendment claim, making it more equivalent to the

Fourth Amendment *Thompson* situation than the Eighth Amendment *Mays* situation.

Extending the above rationale, the Court concludes that, because Plaintiff appears to have been a pretrial detainee at the time of his confinement in Chester Mental Health Center, his claim falls within the Fourteenth Amendment's protections rather than those of the Eighth Amendment. As such, Seventh Circuit precedent dictates that evidence regarding an Administrative Code provision or facility policy on use of force and whether it was ignored by Defendants is not relevant to or probative of the objective reasonableness of their alleged actions.[1] Therefore, Defendants' Motion *in Limine* 5 is **GRANTED**, and any such evidence will be excluded at trial.

**IT IS SO ORDERED.**

**DATED: May 4, 2018**

> **s/ Staci M. Yandle**
> **STACI M. YANDLE**
> **United States District Judge**

---

[1] Plaintiff's counsel argued at the Final Pretrial Hearing that the facts of the situation made it distinguishable from *Thompson* and more akin to the stereotypical Eighth Amendment excessive force case, because *Thompson* involved the hot pursuit of a suspect while here, the controlled environment and restraints on Plaintiff gave Defendants "the time and the ability to consider and apply through appropriate corrective measures, unlike the police officers in *Thompson* where they had to make a decision in the blink of an eye." (Doc. 162, page 14 lines 3 to 13). This is not the point. The objectively-reasonable standard is structured to take such considerations into account when determining what a reasonable officer in that situation would do "under the circumstances." *Thompson* at 454.