**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHRISTOPHER NOVUS DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-CV-1260-SMY** |
| | ) | |
| **LUCAS NANNY, TOM NORDMAN, JOSH RACKLEY, and TERRY STEWART,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Now pending before the Court are Defendants' Motion for New Trial or, in the Alternative, to Alter or Amend Judgment (Doc. 243), their Memorandum in Support (Doc. 244), and Plaintiff's Response (Doc. 249). For the following reasons, the Motion is **DENIED** in its entirety.

## Background

During the initial trial in this case, a jury found that Defendants Lucas Nanny, Tom Nordman, Josh Rackley, and Terry Stewart used excessive force on Plaintiff and failed to intervene during the use of force (Doc. 180). Plaintiff was awarded $1.00 in compensatory damages and $1.00 in punitive damages against each Defendant. This Court found that the combined award of nominal and punitive damages was against the manifest weight of the evidence and constituted a miscarriage of justice and ordered a new trial on the issue of damages only (Doc. 204). The case was set for jury trial to commence on December 9, 2019 (Doc. 211).

Prior to the second trial, Plaintiff filed timely Motions in Limine and Federal Rule of Civil Procedure 26(a)(3) disclosures (Docs. 212 and 213). Defendants did not respond to Plaintiff's Motions in Limine or file Rule 26(a)(3) disclosures. In response to the undersigned's inquiry

during the final pretrial conference on November 20, 2019, Defendants' counsel acknowledged that Defendants' failure to file Rule 26(a)(3) disclosures was not due to excusable neglect. Consequently, and based on the Court's conclusion that Plaintiff would be unduly prejudiced if Defendants were allowed to call witnesses when none had been disclosed, Defendants were barred from presenting witnesses at trial pursuant to Rule 37(c)(1) (Docs. 227, 228).

During the second trial, Plaintiff testified about events leading up to the use of force, the nature of the force used, and comments made by Defendants prior to and while Plaintiff was being handcuffed:

> Nordman told him to "sit down, you retarded motherfucker. I don't feel like dealing with you today." Stewart and Nordman made racial slurs while handcuffing him, and Nordman said, "Oh, we're going to show you how we do it down here. You're a tough guy. You're from the city, huh? You're from Chicago? We're going to show you how we do it down here in Chester. We're going to show you, boy, we're going to show you, boy." He was then handcuffed and taken to the hallway, yanked to the ground from behind by Stewart, and choked by Nanny while he stated, "I'll kill you, motherfucker. I'll kill you, motherfucker." Rackley then began kneeing him about the face (by his left eye) and body while Stewart and Nordman where twisting his ankles and punching his genitals. Plaintiff was "being hit everywhere on my body" and while he could not tell how long the assault lasted, he "felt like it lasted for a lifetime. It felt like it lasted forever, especially when I was being choked. You know, my airway passage being cut off. I, I felt like I was going to die . . . ." He was in "unbearable pain" and "in shock" as a result of Defendants' actions (Doc. 238, pp. 61-68).

Plaintiff also testified that he was then taken to another room and restrained on a bed, and that Defendant Nanny continued to choke him, but stopped when he was told that there was a camera in the room (*Id*. at 75). Plaintiff was held on the bed in 4-point restraints for hours while in pain (*Id*. at 76). He described his injuries including, subconjunctival hemorrhaging, swollen wrists, bruising, a knot behind his ear, and handprints on his neck (*Id*. at 78-80). Photographs depicting

Plaintiff's injuries were admitted into evidence, and Plaintiff testified that he suffered emotional harm and experienced sleeplessness and jumpiness as a result of the attack (*Id*. at 78-80; 83).

Dr. Ahmed Tariq testified regarding his examination of Plaintiff following the incident and his findings. He noted periorbital tenderness and swelling, swelling behind the left ear but normal eye movement and reaction (*Id*. 106, 108). He prescribed Tylenol, ordered an x-ray of the periorbital region, and referred Plaintiff to an Optometrist (*Id*. 118).

The jury awarded Plaintiff $150,000 in compensatory damages and $75,000 in punitive damages against each Defendant (Doc. 236).

## Legal Standard

Under Rule 59(a), the Court has discretion to grant a new trial where the jury's verdict is against the manifest weight of the evidence or when a new trial is necessary to prevent a miscarriage of justice. *Romero v. Cincinnati, Inc.*, 171 F.3d 1091, 1096 (7th Cir.1999). A party will not be granted a new trial where the jury verdict has reasonable support in the record. *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1079 (7th Cir.1998). To satisfy the "manifest weight of the evidence" standard, a party must show that no rational jury could have entered judgment against him. *King v. Harrington*, 447 F.3d 531, 534 (7th Cir.2006).

Under Rule 59(e), the Court may alter or amend its judgment if the movant "clearly establish[es] (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (quoting *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)). Relief pursuant to Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). "Manifest error" is not demonstrated merely by the disappointment of the losing party. *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069

(N.D. Ill. 1997).

**Discussion**

Defendants argue that a new trial is warranted, or alternatively, the Court should vacate the Judgment because it erred in excluding their witnesses and barring evidence of Plaintiff's conduct. They further argue that a trial on damages only is "greatly prejudicial," and the damages award is "excessive, arbitrary, and unconstitutional."

The case was set to be re-tried on December 9, 2019 by Order entered on August 7, 2019 (Doc. 211). Thus, Defendants had 3 months to file Rule 26(a)(3) disclosures identifying the witnesses they intended to present at trial. They offered no legitimate excuse for their failure to do so, and the failure was not harmless. As this Court previously explained, under those circumstances, barring Defendants from presenting witness testimony at trial was appropriate:

> …Rule 37(c)(1) provides that if a party fails to provide information or identify witnesses in a Rule 26(a) disclosure, "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Defendants contend they should be allowed to rely on Rule 26(a)(3) disclosures they filed on September 13, 2017, prior to the first trial, and argue that because each of the witnesses they intend to call at the upcoming trial were identified in those disclosures, there can be no prejudice to Plaintiff. Defendants failure to submit timely disclosures prior to the new trial was not substantially justified or harmless. During the Final Pretrial Conference, when given the opportunity to do so, Defendants offered no explanation for failing to comply with Rule 26(a)(3). Their Motion likewise offers not substantial justification other than a mistaken and unsupported belief that disclosures made prior to the first trial are sufficient. They are not. This case is set for a *new* trial – not merely a continuation of the previous trial, and Defendants' failure to serve timely Rule 26(a)(3) disclosures certainly prejudices Plaintiff's ability to prepare for trial. The new trial is narrowly focused on damages and Defendants' previous disclosures identify witnesses whose testimony would obviously be irrelevant and immaterial to damage issues. As such, Defendants' attempt to rely on their previous disclosures, even after-the-fact, does not appear to be in good faith… (Doc. 227).

The instant motion offers no new argument as to why that ruling should be revisited for a third

time.

Defendants further argue that the Court erred in barring evidence of Plaintiff's conduct and language immediately prior to the incident. Specifically, they assert that the jury should have been allowed to hear "that Plaintiff was upset, that he swore at staff and [should] have also been able to hear what Plaintiff actually said to staff" (Doc. 244, p. 16). But what Plaintiff *said or did* prior to being subjected to force by Defendants had no bearing on his injuries and damages. A jury had already found that Defendants used excessive force in their treatment of Plaintiff. And, the words Plaintiff may have spoken, the reasons Defendants chose to restrain him, and any action that Plaintiff may have taken prior to the use of force are simply irrelevant to the issue of damages.[1] Such evidence was properly excluded. *See* FED.R.EVID. 401 and 402.

Defendants also contend that limiting the second trial to damages was "greatly prejudicial" because barred evidence would have shown that some use of force was lawful, that any damages were the result of the lawful use of force, and that separating liability from damages was prejudicial. As the Court noted in its Order requiring a new trial on damages only (Doc. 204), the Constitution does not require that "an issue once correctly determined, in accordance with the constitutional command, be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed by a jury." *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 498 (1931). In this case, damages was determined erroneously at the first trial. Liability was not.

Finally, Defendants argue that the jury's award of $150,000 in compensatory damages and $75,000 in punitive damages is both unsupported and excessive. The jury's assessment of compensatory damages is given substantial deference. *G. G. v. Grindle*, 665 F.3d 795, 799 (7th

[1] In any event, Defendants did not object to Plaintiff's Motion in Limine 9 (Doc. 212), which sought to bar various reports that Defendants would have relied upon as evidence of Plaintiff's conduct (Doc. 221, p. 9, and Doc. 226).

Cir. 2011). In determining whether the assessment is proper, the Court considers "whether that award is 'monstrously excessive' or lacks any rational connection to the evidence." *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009). While the Court may also compare the jury's award with other compensatory damage awards that have been upheld in similar cases, such comparisons are rarely dispositive or helpful – compensatory damage claims are fact specific and do not lend themselves to "mathematical exactitude." *Id.* As such, the question for this Court is whether the jury's award was rationally connected to the evidence presented.

Defendants contend that the jury's assessment of compensatory damages was excessive and "not based on any medical or physical evidence." Neither is true. Plaintiff testified that he was beaten and choked by Defendants, photographs were admitted that depicted some of his injuries, and Dr. Tariq testified that his physical findings substantiated Plaintiff's report of physical abuse. Plaintiff also testified regarding his pain and suffering and the emotional impact of the assault and his injuries.

Defendants also argue that Plaintiff's injuries were minor, not permanent, and did not require additional medical care. But the jury, after listening to Plaintiff's testimony and considering the evidence, found that the injuries were not unworthy of compensation. While a different jury may have awarded less, the jury's award of $150,000 was supported by the evidence and was not "monstrously excessive."

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protect rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There was ample evidence in this case from which the jury could conclude that Defendants' actions were malicious, callous, and motivated by a desire to harm Plaintiff. The jury

awarded $75,000 in punitive damages and $150,000 in compensatory damages, which is "well within the range of constitutionally acceptable values." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013); *Green v. Howser*, 942 F.3d 772, 782 (7th Cir. 2019) ("We have approved ratios as high as 37:1, as well as more modest but still larger ratios like 5:1 and 6:1.").

Lastly, Defendants argue that the punitive damages award should be reduced because they are unable to pay. This argument, based entirely on *dicta*, is unpersuasive. *See Harris v. Harvey*, 605 F.2d 330, 341 (7th Cir. 1979) (suggesting in *dicta* that the trial court may want to reduce a punitive damages amount if "defendant can show financial hardship"); *Kemezy v. Peters*, 79 F.3d 33, 35 (7th Cir. 1996) (stating in *dicta* that an award of punitive damages against a person with little wealth "may exceed his ability to pay and perhaps drive him into bankruptcy" but also observing that "[t]he reprehensibility of a person's conduct is not mitigated by his not being a rich person, and plaintiffs are never required to apologize for seeking damages that if awarded will precipitate the defendant into bankruptcy"). Moreover, while Defendants state that Rackley is unemployed, Stewart is disabled, and Nordmann is retired, these assertions do not establish that Defendants are unable to pay the punitive damages award nor do they provide a full picture of Defendants' finances.[2]

---

[2] The issue of whether Defendants will be indemnified by Illinois' Indemnification Act, 5 ILL. COMP. STAT. § 350/0.01, *et seq.*, is not properly before the Court and will not be addressed.

## Conclusion

For the foregoing reasons, Defendants' Motion for New Trial or, in the alternative, to Alter or Amend Judgment (Doc. 243) is **DENIED** in its entirety. Plaintiff is granted leave to supplement his Motion for Attorney Fees (Doc. 241) within 14 days of the date of this Order. Defendants shall respond to Plaintiff's Motion for Attorney Fees and Supplement (if filed) within 30 days of service of the Supplement or expiration of the deadline to do so.

**IT IS SO ORDERED.**

**DATED: June 24, 20220**

**STACI M. YANDLE**
**United States District Judge**